## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

JAMES M. KAMARA

        Plaintiff,

                                  C.A. No. 04-705JJF

V.

MICHAEL FUNDING, LLC, a Limited Liability
Company of the State of New York,

        Defendant

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

### INSTRUCTIONS

    A. Defendant Michael Funding by its undersigned counsel is hereby required to answer in writing the following interrogatories on or before January 30., 2006, under oath in accordance with Rule 33of the Rules of this court. It's requested that the defendant supplement his answers if any further information is required, up to the date of the trial.

    B. In answering the interrogatories, furnish all information in the possession of you, your agents, your employees, your attorneys, and investigators for your attorneys that, refers to all loan transactions between Michael funding and James M.Kamara/ J.M.Kamara Management, Inc.

    C. If you are currently without information necessary to respond to any Interrogatory or Document Request, such Interrogatory or Document Request shall be deemed to require a reasonable investigation.

    D. If you cannot answer an interrogatory in full after exercising due diligence to secure the information to do so, state the answer to the extent possible specifying your inability to answer the remainder, setting forth the facts surrounding your investigation, describing whatever information or knowledge you have concerning the unanswered

portion, and identifying who else might have the information sought.

    E. If you withhold any requested information on the basis of privilege, please so state, and for each such request or document provide:

    (1) The nature of the privilege(s) claimed;

    (2) The form in which the information exists and the person(s) who has knowledge of it;

    (3) The general subject matter of the material.

    F. when an interrogatory requests data that can be provided as a computer database or spreadsheet file, Plaintiff requests that the file be copied on an paper.

    G. These Interrogatories are to be considered continuing and supplemental answers must be filed by Defendant upon discovering or becoming aware of information rendering prior answers or any part thereof inaccurate, incomplete or untrue.

## DEFINITIONS

    A. A request to "describe" any oral statement or communication is a request to state:

    1. The name presents address, and telephone number of each individual making such statement or communication.

    2. The name of any principal or employer that such individual was thereby representing and the position in which such individual was then employed or engaged by such principal or employer.

    3. The name, present address, and telephone number of the individual or individuals to whom the oral statement or communication was made, and the name of any principal or employer that such individual or individuals were representing at the time of and in connection with such oral statement or

        communication, as well as the employment position in which they were then employed or engaged.

4. The names, present addresses, and telephone numbers of any other individuals present when such oral statement or communication was made or who heard or acknowledged hearing the same.

5. The place where such oral statement or communication was made.

6. A brief description of the contents of such oral statement or communication.

    B. The term "person" shall include a natural person, partnership, corporation, joint venture, association, or other group however organized.

    C. Whenever a request is made to "identify" a natural person, it shall mean to supply all of the following information:

1. His/her full name.

2. His/her employer and position at the time.

3. The name of any person or entity (natural or artificial) whom she/he claimed to have represented in connection with the matter to which the interrogatory relates.

4. His/her last known address, telephone number, and employer.

5. His/her present employer.

    D. A request to "explain fully" any answer, denial or claim is a request (insofar as may be applicable) to state fully and specifically each fact and/or contention in support of your answer, denial or claim.

    E. The term "transaction," when used without qualification, means all transactions relating the purchase of real estate between the plaintiff (James M. Kamara/J.M.Kamara Management Inc and the defendant /including all companies, and other

entities through who the defendant does financial transactions.

## INTERROGATORIES

### General Questions and Identification of Documents

1. Please identify the person answering each of the instant interrogatories.

2. Identify each document, which you may introduce into evidence in this case.

3a. Identify all documents, which contain information concerning the loan transaction.

3b. State which, if any, of the above documents were furnished to Plaintiff, and where and when each such document was furnished to Plaintiff.

4. Did you make any disclosure on or before the settlement? If yes, please state when, where and how/documents were furnished to the Plaintiff.

5. Identify each document, including each notice, that you mailed or otherwise delivered to Plaintiff concerning Mortgage transaction. For each document, state whether it was delivered or mailed, the address it was mailed or delivered to, the manner of delivery if it was not mailed, and whether it was received by Plaintiff, and identify all persons having personal knowledge of these matters.

6. Identify what documents are given by Original Creditor or Assignee routinely to all persons to whom it extends credit or on whose behalf it arranges credit. State the time and order each document be given to the purchaser or debtor.

7. As to each any every denial you have made of an allegation of the Plaintiff's claim, explain fully and state the facts, which support that denial, and identify all persons having personal knowledge of such facts.

### TIL Coverage

8. If Original Creditor is claiming that it is not a creditor within the Truth In Lending Act, state the following information for (1) the calendar year _____ [and (2) the portion of the calendar year _____ that preceded the date of consummation of the underlying transaction:

    a. The number of persons to whom Original Creditor granted the right to defer payment of debt, incur debt and defer its payment, or purchase property or services and defer payment therefor;

    b. The number of such transactions in which Original Creditor took a security interest in a dwelling;

    c. The total number of such transactions covered by HOEPA; and

    d. The number of such transactions covered by HOEPA that were made through a mortgage broker.

9. Identify all persons having personal knowledge of the information set forth in response to the preceding interrogatory, and all documents that contain, refer to, or relate to this information.

### Bona Fide Error

10. Please describe fully any instruction given to the employees or agents of Assignee or Original Creditor as to the required disclosures under the Truth in Lending Act, including the subject matter of that instruction, by whom it was given, whether it was mandatory or voluntary, and how many hours each individual natural person spent under such instruction.

11. Explain fully your procedures adapted to avoid clerical errors with regard to the requirements of the Federal Truth in Lending Act. Identify each document which contains information concerning the actual maintenance of those procedures by you within the ninety-day period immediately preceding the instant extension of credit, and the persons having knowledge of these procedures and their maintenance during that period.

### Payments and Balance Owed

12. State the loan amount as of October 16, 1998, the interest rate and monthly payment. When did you send the last monthly statement indicating the balance and requesting payment? Also State the total amount you allege to be owing on the loan transaction as of the date of the filing of this lawsuit, itemized to show unpaid principal, accrued finance charges, and other charges, as applicable.

13. State the total amount of dollars that Plaintiff has paid to you in the loan transaction. Identify each payment individually, state the date of the payment, and itemize the amounts allocated to principal, interest, fees, and other charges.

14. Is Assignee maintaining an escrow account for real estate taxes and/or insurance for defendant? If so, state the purpose of the escrow and the amount in escrow, and identify to whom funds are disbursed from escrow.

### Credit Insurance Violations

15. At the time of the instant transaction, was it your procedure to require any of customers to purchase credit life, or credit disability insurance? If so, explain fully, stating the criteria applied in determining which customers were required to purchase such insurance, and identifying the persons having personal knowledge of your procedure.

16. Was the cost of credit life insurance and/or credit disability insurance separately disclosed in writing to the Plaintiff before the Plaintiff signed the statement of desire for such insurance contained in the disclosure statement in the instant transaction? Explain fully, identifying each person having personal knowledge of these facts.

17. Was the cost of credit life and/or credit disability insurance entered in the calculation of the amount financed in the disclosure statement before the Plaintiff signed the statement of desire for such insurance? Explain fully, identifying each witness to any such act.

## Refinancing

18. If any part of the consideration for the loan transaction was used to repay a prior extension of credit:

   a. State the date and transaction number of each such prior transaction;

   b. Identify each document that relates or refers to each such prior transaction;

   c. State the amount of the finance charge, interest, credit life, property, or disability insurance premiums, any other insurance premiums, and any other amount, rebated or credited to Plaintiff upon refinancing of each prior transaction, and the date of each such rebate;

   d. State the payoff amount and itemize the total; and

   e. Identify all persons having personal knowledge of the prior transaction and the calculation of its payoff amount.

## Improper Treatment of Fees

19. List separately all persons to whom any charges, fees, or any other amounts were paid in connection with this transaction, including the name, address, and telephone number of the payee, the amount disbursed to each, the date of dispersal, and the check number for each dispersal.

20. State exactly which services were provided for each and every charge listed on the HUD-1 settlement statement?

21. Regarding the document preparation fee, list each and every document prepared and the cost of preparing it, and identify the person who prepared it.

22. Describe your (including your employees and related organizations) relationship with [settlement service providers, brokers, home improvement contractors], and list all lending transactions in which you and [settlement service providers, brokers, home improvement contractors] have been involved.

As to the all the charges that is designated on the HUD-1 settlement statement dated October 16,1998 please:

23.
a.   Explain the nature of the charge;

b.   Explain how the charge was calculated, including the use of any rate sheets;

c.   If this charge is related to an increase in the interest rate for the transaction, state what the "par" rate for the Plaintiff would have been absent this charge;

d.   State the date, payee, and amount of each payment that represents any portion of this charge, and identify the check or other instrument or payment mechanism and the account it was drawn on.

24.   Did Assignee or Original Creditor receive any portion of any fee listed on the HUD-1 settlement statement?  If yes, identify the fee and the portion received.

25.   Did Assignee or Original Creditor receive any indirect compensation from the payment of any fee on the HUD-1 settlement statement?  If yes, identify the fee and the nature and amount of the indirect compensation received.

### HOEPA Disclosures

26.   Describe the date, time, place and method of delivery of HOEPA disclosures required by Section 32 of Regulation Z.

### HOEPA Repayment Ability and Refinancing

27.   Did Assignee or Original Creditor consider Plaintiff's ability to repay the credit in accordance with the contractual repayment schedule?  If so, explain the factual information and the underwriting criteria that were relied on, identify any documents that pertain to the determination that Plaintiff did have the ability to repay,

and identify all persons involved in making this determination.

28. How was the decision made which existing obligations of Plaintiff would be consolidated into the loans made by Original Creditor? Identify (a) any policies or practices of Assignee or Original Creditor which relate to such a decision, (b) the persons most knowledgeable about such policies or practices and (c) the persons who made this decision with respect to Plaintiff's transaction, and (d) all documents pertaining to such policies or practices.

29. Identify any and all documents pertaining to the practice by either Assignee or Original Creditor of refinancing the loans of existing customers.

30. What, in your view, was the purpose underlying the loans and how did the loans benefit the Plaintiff?

## Witness Identification

31. Explain fully the manner in which the credit application in this case was taken including the identity of the individual applying for credit, the identity of the employee who took the application, the manner in which this was done, and the date and time of the application.

32. Identify each telephone contact between Plaintiff and you or your agent with regard to the loan transaction. Identify the parties to each such telephone conversation, state its date and time and who placed the call, and describe its substance.

33. Identify the location at which the closing of the underlying credit transaction took place. Identify all persons present at the closing, including their function and any statements they made during the transaction.

34. Identify the loan officers, brokers, underwriters or other individuals from Original Creditor and from Assignee who were involved in soliciting Plaintiff or identifying plaintiff as a potential customer, processing the credit transaction, and approving the credit transaction, and describe the role each such person played.

35. Identify those individuals who are most knowledgeable about Assignee's and Original Creditor's underwriting procedures and practices during the period 1998.

36. Identify those individuals who are most knowledgeable about the loan business Assignee conducted with Original Creditor.

37. Identify all individuals, in addition to those mentioned above, that have any knowledge regarding the facts underlying this transaction or whom you intend to call as a witness, with a statement concerning the scope of such individual's knowledge or expertise as it relates to this action.

## Assignments and Parties

38. Does Assignee own the obligation underlying this action or is it servicing the obligation for another entity? If the latter, identify such other entity, including its bond trustee and the specific loan pool, if any.

39. List each entity who now has or has ever had any interest in the underlying loan note, including, but not limited to, any broker, table-funder, correspondent lender, originator, lender, warehouse lender, trustee, investor, trustee under a pooling and servicing agreement, servicer, or similar party; identify that party's name, address, and telephone number; describe that party's interest in the transaction; state the date it obtained that interest, the date it relinquished that interest, and the identity of the entity to which it relinquished that interest; and state the nature and amount of all consideration it received or disbursed in connection with obtaining or relinquishing that interest.

40. List each entity who now has or has ever had any interest in the underlying mortgage, including, but not limited to, any broker, table-funnier, correspondent lender, originator, lender, warehouse lender, trustee, investor, trustee under a pooling and servicing agreement, service, or similar party; identify that party's name, address, and telephone number; describe that party's interest in the transaction; state the date it obtained that interest, the date it relinquished that interest, and the identity of the entity to which it relinquished that

interest; and state the nature and amount of all consideration it received or disbursed in connection with obtaining or relinquishing that interest.

41. If the mortgage underlying this case is owned by an investor other than Assignee, describe the contractual arrangement for allocating payments received between Assignee and the investor.

### HOEPA Assignee Liability and Lending Without Regard to Repayment Ability

42. Identify any and all documents pertaining to or relating or referring to Assignee's decision to purchase or not purchase HOEPA (Section 32) loans or to the structuring of loans so as not to trigger Section 32.

43. Was Assignee at any time an investor in or did it provide financing to Original Creditor? If so, describe the relationship, identify all documents pertaining to this relationship, and identify the person most knowledgeable about the relationship.

44. During the relevant time period, did Assignee impose any underwriting requirements on Original Creditor regarding loans destined for purchase by Assignee? If so, describe such requirements and identify any documents that contain or refer to such requirements.

45. Is Assignee aware of the underwriting guidelines utilized by Original Creditor? If so, identify any documents that contain or refer to such guidelines.

46. Is there any relationship of any sort between Original Creditor and Assignee? If yes, explain fully.

47. Describe any and all underwriting, file auditing, or due diligence conducted by Assignee prior to purchasing mortgages from Original Creditor, identify the persons conducting such reviews, and describe any and all such activity regarding the mortgages involved in this case, including an identification of all documents pertaining to such review.

48. Did Assignee participate in any way in the underwriting of the loans underlying this action? If so, describe this participation, identify all individuals who

participated and identify all documents which relate to such participation (including documents relating to this specific transaction and documents relating to general practices).

49. Did Assignee participate in any way in drafting or selecting the loan documents utilized by Original Creditor in the processing or closing of the loan underlying this action? If so, identify the correspondence or other documentation pertaining to this activity and identify the persons who have personal knowledge of these matters.

50. Did Assignee participate in any way in the selection of settlement services providers (e.g. appraisers, title companies, law firms) that received fees in Plaintiff's loans or did Assignee impose any conditions on Original Creditor's selection or on the range of fees allowable? If so, describe such participation or conditions, identify any documents pertaining to such participation or conditions, and identify the persons who have personal knowledge of these matters.

51. Regarding the transfer of the mortgage underlying this action from Original Creditor to Assignee, state or identify the following:

    a. The date of the transfer;

    b. Whether the transfer was part of a larger agreement involving other mortgages, as well (for example, a Master Agreement for Sale and Purchase of Mortgages); and

    c. All documents pertaining to the transfer or to such larger agreement.

52. What consideration, if any, was paid by Assignee to Original Creditor as consideration for the loans underlying this action?

53a. When did Assignee begin purchasing mortgages from Original Creditor?

53b. Identify all documents pertaining to the initiation of such transactions.

54. State the number of and total dollar amount of loans purchased by Assignee from Original Creditor.

55. State the number of and total dollar amount of loans in Assignee's current portfolio and the percentage and dollar amount of these loans that were purchased from Original Creditor, and provide a breakdown for loans purchased in 1996-2005

56. State the number of and total dollar amount of Original Creditor loans in Assignee's current portfolio that were refinancing of existing Assignee loans.

57. Identify by name, address, and telephone number all present Assignee customers residing in part of the USA whose loan was purchased from Original Creditor after Original Creditor refinanced an existing Assignee account.

58. Regarding loans acquired from Original Creditor, provide a breakdown for loans originated in [relevant years] showing the loans originated in such years and the loans still remaining in Assignee's portfolio.

59. List the delinquency and default rate (breaking down delinquencies into more than 30 days, more than 60 days, more than 90 days and breaking down defaults into whatever categories are used by Assignee) for Assignee's home equity loan portfolio for loans originated in each of the following years: 1996-2005

60. List the delinquency and default rate (breaking down delinquencies into more than 30 days, more than 60 days, more than 90 days and breaking down defaults into whatever categories are used by Assignee) for loans in Assignee's loan portfolio that were originated by Original Creditor for loans originated in each of the following years: 1996- 2005 to present.

**61. Determination of property value for loan.**

How was the value of the property determined before the loan approval? What method was used to

determine the property value? What was the property
value at the time of the loan?
Give the:

    Name, present address, and telephone number of
    the individual or individuals to whom the oral
    statement or communication was made, and the name
    of any principal or employer that such individual
    or individuals were representing at the time of
    and in connection with such oral statement or
    communication, as well as the employment position
    in which they were then employed or engaged.

JAMES M. KAMARA

P.O. Box 448, Smyrna DE 19977

302-632-6920

December 19, 2005